UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PEGGY L.[1],                          )
                                      )
                    Plaintiff,        )
                                      )
          v.                          )        No. 1:18-cv-03429-DLP-TWP
                                      )
ANDREW M. SAUL, Commissioner of the   )
Social Security Administration,       )
                                      )
                    Defendant.        )

## ORDER

Plaintiff Peggy L. seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 423(d), 405(g). For the reasons set forth below, this Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration.

### I.    PROCEDURAL HISTORY

On January 28, 2015, Peggy filed an application for Title II disability and disability insurance benefits, alleging an onset date of February 1, 2014. The claim was denied initially on April 14, 2015, and on reconsideration on May 18, 2015. Peggy filed a written request for hearing on May 28, 2015, which was granted. On

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

May 16, 2017, Administrative Law Judge ("ALJ") Rita E. Foley conducted a hearing, where Peggy and vocational expert Amelia Shelton testified. On August 2, 2017, ALJ Foley issued an unfavorable decision finding that Peggy was not disabled. The Appeals Council denied Peggy's request for review of the ALJ's decision on September 4, 2018. Peggy now requests judicial review of the Commissioner's decision. See 42 U.S.C. § 1383(c)(3).

## II.    STANDARD OF REVIEW

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520. The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [him] unable to perform

[his] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520.

After step three but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and, if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of her age, education, job experience and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law.

*Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Peggy is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

In this substantial-evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues, *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).

4

The ALJ need not address every piece of evidence in his decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford,* 227 F.3d at 872.

## III.  BACKGROUND

### A. Factual Background

Peggy was 48 years old as of her alleged onset date and is now 54. [Dkt. 6-6 at 2 (R. 236).] Peggy completed two years of college. [Dkt. 6-7 at 17 (R. 288).] She has past relevant work history as an insurance clerk, insurance agent, and a production assembler. [Dkt. 6-2 at 66 (R. 65).]

### B. Medical History[2]

On February 13, 2013, Peggy's treating cardiopulmonologist, Dr. Eric Trueblood, completed a Cardiac Medical Source Statement. [Dkt. 6-13 at 9 (R. 633).] He noted that Peggy uses a continuous positive airway pressure ("CPAP") machine for obstructive sleep apnea and two medications for asthma. [Id.] He indicated that Peggy was capable of performing high stress work, could stand and walk for about 4 hours in a workday, and should avoid even moderate exposure to soldering fluxes, solvents/cleaners, fumes, odors, and gases, dust, and chemicals. [Id. at 9-11 (R. 633-35).] Dr. Trueblood indicated that Peggy would have good days and bad days and that she would miss about one day per month due to her impairments and

---

[2] The Undersigned includes only the medical evidence relevant to this opinion.

5

treatment. [Id. at 12 (R. 636).] Finally, Dr. Trueblood wrote that "Peggy has asthma that is sometimes triggered by workplace dusts and fumes. She can work as long as dust and airway irritants are minimized." [Id.]

On July 22, 2014, Peggy underwent an MRI of her lumbar spine, which found a small focal slightly right paracentral disc extrusion with minimal impression on the thecal sac at T12-L1 and facet osteoarthropathy from L3-L4 through L5-S1 with mild to moderate proximal foraminal narrowing at L4-L5 bilaterally. [Dkt. 6-11 at 36-37 (R. 542-43).]

In January 2015, Peggy began seeing Dr. Daniel Lee at Orthopedics of Southern Indiana. [Dkt. 6-9 at 31-33 (R. 435-37).] X-rays taken of her right knee that day showed mild degenerative changes and a complete ACL tear, but Dr. Lee believed that her complaints of knee pain, stiffness, and numbness and tingling were caused by underlying osteoarthritis. [Id.] Dr. Lee recommended conservative management with therapy, anti-inflammatory medications, and a steroid injection. [Id.] At her return visit on February 17, 2015, Dr. Lee diagnosed Peggy with pes anserine bursitis (inflammation in the knee), gave her another steroid injection in the right knee, and prescribed physical therapy. [Dkt. 6-9 at 27 (R. 431).] On March 13, 2015, Peggy followed up with Dr. Lee and noted that she had experienced some relief of her knee pain with physical therapy, but that she felt increased pain in the posterior aspect of the knee. [Dkt. 6-11 at 73 (R. 579).]

On April 14, 2015, state agency physician Dr. J.V. Corcoran completed a records review and disability determination explanation in which he found Peggy to

be not disabled. [Dkt. 6-4 at 2-12 (R. 128-38).] He concluded that Peggy had the RFC to perform light work, with the following limitations: occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand and walk for about six hours in an eight hour workday; sit for about six hours in an eight hour workday; can never climb ladders, ropes, and scaffolds; can occasionally balance, climb ramps or stairs, stoop, crouch, kneel, and crawl; must avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, gases, and poorly ventilated areas. [Id.]

Peggy returned to Dr. Lee on April 21, 2015, complaining of diffuse pain about the knee. [Dkt. 6-11 at 63 (R. 569).] She noted that the pain radiated up and down her right leg, with muscle spasms, and that the pain was only relieved somewhat with ibuprofen. [Id.] Because Peggy had not experienced any significant relief with conservative management, Dr. Lee ordered an MRI of the right knee. [Id. at 65 (R. 571).]

An MRI of the right knee performed on April 22, 2015 revealed a medial meniscus tear; chronic ACL tear; MCL sprain; mild cartilage thinning in the medial compartment; joint effusion; and a Baker cyst. [Dkt. 6-12 at 28-29 (R. 621-22).] On April 24, 2015, Dr. Lee discussed the MRI results with Peggy and indicated that underlying arthritis may be the cause of the majority of her knee pain, along with chronic instability and a degenerative meniscal tear. [Dkt. 6-12 at 27 (R. 620).] Dr. Lee performed another steroid injection in the knee and encouraged Peggy to continue with home exercises, but noted that if her symptoms persisted, she may need arthroscopy. [Id.] The records are not before the Court, but Peggy underwent

arthroscopic knee surgery on June 2, 2015. [Dkts. 6-17 at 58 (R. 872); 6-3 at 21-23 (R. 125-27).]

On May 18, 2015, state agency physician Dr. Joshua Eskonen performed a records review at the reconsideration level. [Dkt. 6-4 at 14-26 (R. 140-52).] Based on the exhibits that Dr.Eskonen reviewed, it does not appear that he evaluated the April 2015 right knee MRI. [Id.]  Dr. Eskonen found the same limitations as Dr. Corcoran in April 2015. [Id.]

On April 22, 2016, Peggy was admitted to IU Health Morgan Hospital due to her complaints of chest pain, shortness of breath, palpitations, and dizziness. [Dkt. 6-14 at 11 (R. 702).] An EKG revealed that Peggy had a right bundle branch block.[3] Peggy was transferred to Community South Hospital, where she was discharged on April 26, 2016 with a diagnosis of chest pain. [Dkt. 6-15 at 9-10 (R. 727-28).]

Peggy was evaluated by Dr. Gregory Strock in consultation on June 22, 2016. [Dkt. 6-13 at 67-68 (R. 691-92).] Dr. Strock concluded that Peggy had chronic low back pain and some radiation in the lower extremities with associated sensory complaints, which could be attributed to sacroiliac joint mediated pain with associated diabetic neuropathy symptoms. [Id.] On December 16, 2016, Peggy returned to Dr. Strock with continued complaints of right-sided low back pain with radiation into the posterior thigh. [Dkt. 6-13 at 56 (R. 680).] Dr. Strock reiterated

---

[3] A bundle branch carries signal from the atria (top of the heart) to the ventricles (bottom of the heart). With a right bundle branch block, there is a problem with the electrical signal traveling to the right ventricle, causing the ventricle to contract a little later than it normally would and potentially causing the heart to eject slightly less blood. *Right Bundle Branch Block*, https://www.cedars-sinai.org/health-library/diseases-and-conditions/r/right-bundle-branch-block.html (last visited December 26, 2019).

the findings of the 2014 lumbar spine MRI, namely that there was some mild to moderate neural foraminal stenosis at L4-L5. [Id.] Finally, Dr. Strock confirmed the diagnoses of neuropathy, right lumbar radiculopathy, spinal stenosis, and low back and right lower extremity pain. [Id. at 55-56 (R. 679-80).]

### C. ALJ Decision

In determining whether Peggy qualified for benefits under the Act, the ALJ went through the five-step analysis set forth in 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Peggy was insured through December 31, 2017 and had not been engaged in substantial gainful activity since her alleged onset date of disability. [Dkt. 6-2 at 35 (R. 34).]

At step two, the ALJ found that Peggy had severe impairments of: diabetes mellitus, type II; fibromyalgia; hypothyroidism with thyroid nodules; asthma; obstructive sleep apnea; degenerative disc disease of the lumbar spine; degenerative joint disease of the right knee; chronic obstructive pulmonary disease; obesity; cardiac arrhythmia (right bundle branch block); and headaches. [Dkt. 6-2 at 35 (R. 34).] The ALJ also found that Peggy had nonsevere impairments of: hyperlipidemia; hypertension; gastroesophageal reflux disease; possible diabetic gastroparesis; sarcoidosis; cholecystitis; steatohepatitis; abnormal liver function; fractured left metatarsal; calcaneal spur; tinnitus; DeQuervain's Tenosynovitis; and depression. [Id. at 36 (R. 35).]

At step three, the ALJ considered Peggy's knee condition under Listing 1.02; back condition under Listing 1.02; COPD under Listing 3.02; asthma under Listing

3.03; and cardiac arrhythmias under Listing 4.05. The ALJ determined that Peggy did not meet or medically equal any listing. [Dkt. 6-2 at 38-39 (R. 37-38).] The ALJ further considered Peggy's obesity under Social Security Ruling 02-1p; her sleep-related breathing disorder under 3.00P; her diabetes mellitus under Social Security Ruling 14-2p; and her fibromyalgia under Social Security Ruling 12-2p. [Id.]

After step three, but before step four, the ALJ determined that Peggy had the RFC to perform light work, with the following limitations: required to have the option to sit or stand alternatively at will every 30-45 minutes while remaining on task; can frequently operate foot controls on the left; can never climb ladders, ropes, and scaffolds; can occasionally climb ramps or stairs, stoop, crouch, kneel, and crawl; cannot have constant rotation, flexion, or extension of the neck; can frequently handle or finger bilaterally; must avoid concentrated exposure to extreme cold, extreme heat, a noise level above the average modern office setting, and environmental irritants such as fumes, odors, dusts, gases, and poorly ventilated areas; and is limited to occupations which do not require fine or specialized hearing abilities. [Dkt. 6-2 at 40 (R. 39).] As to mental limitations, the ALJ determined that Peggy had mild limitations in understanding, remembering, or applying information and concentrating persisting, or maintaining pace; the ALJ determined that Peggy had no limitations with interacting with others and with adapting or managing herself. [Id.]

At step four, the ALJ then determined that Peggy could not perform her past work as a production assembler, but could perform her past work as an insurance clerk and insurance agent. [Dkt. 6-2 at 47 (R. 46).] Accordingly, the ALJ determined that Peggy was not disabled.

## IV.    Analysis

Peggy lodges two challenges to the ALJ's decision. First, she asserts that the ALJ improperly weighed the opinion evidence in the record, which resulted in inaccurate hypothetical questions being presented to the vocational expert and in turn led to an inaccurate RFC assessment. Secondly, Peggy argues that the Appeals Council committed reversible error by failing to evaluate the "new and material" evidence that Peggy submitted after the ALJ's decision was issued.  The Court will address each challenge in turn.

### A.  Weighing of Physician Opinions

First, the Plaintiff argues that the ALJ improperly weighed the opinions of the state agency physicians and gave significant, but not controlling weight, to her treating cardiopulmonologist, Dr. Eric Trueblood. This error, Peggy argues, led to the ALJ compiling an inaccurate RFC.

#### i.  *State Agency Physicians*

The Plaintiff argues that the ALJ erred in giving great weight to the opinions of both state agency physicians. [Dkt. 12 at 20.] Peggy notes that the state agency physicians did not consider a right knee MRI from April 2015 that showed degenerative joint disease and that the ALJ unilaterally interpreted that MRI and

any corresponding limitations. [Dkts. 12 at 20; 6-12 at 27 (R. 620).] Additionally, the Plaintiff argues that those agency physicians did not have the benefit of reviewing the evidence of Peggy's cardiac impairments, including an EKG that revealed a right bundle branch block. [Id. at 23.] Ultimately, Peggy argues, the ALJ improperly relied on the state agency physicians' opinions that did not review all relevant evidence in the record, which led to the ALJ assigning improperly a light exertion level RFC. Remand is necessary, therefore, to subject the medical evidence to expert scrutiny, rather than having the ALJ scrutinize the evidence herself. [Id.]

The Defendant argues that the ALJ provided good reasons for giving great weight to the state agency physicians' opinions. [Dkt. 19 at 5-6.] Because the ALJ used the April 2015 right knee MRI to impose limitations beyond those prescribed by the state agency physicians, the Defendant maintains that it was harmless error for the MRI not to have been evaluated by a medical expert. [Id. at 7.] As to the medical evidence of cardiac impairments, the Commissioner argues that the ALJ was not required to submit it to medical scrutiny because the ALJ acted in her discretion not to call an expert. [Id.] The ALJ's discussion of Peggy's cardiac impairments, along with an explanation of how she accounted for those impairments in the RFC, is sufficient. [Id.]

In reply, the Plaintiff argues that the problem lies not in how the ALJ weighed or interpreted the medical imaging, but in the fact that she did it at all. [Dkt. 21 at 1-2.] The ALJ impermissibly played doctor and concluded, without medical input, that a sit/stand option would accommodate Peggy's impairments.

[Id.] The Plaintiff maintains that the ALJ accepted outdated state agency physician opinions and unilaterally interpreted medical evidence, an undertaking that constitutes clear error. [Id.]

Here, the ALJ gave great weight to the opinions of state agency physicians J.V. Corcoran and Joshua Eskonen. [Dkt. 6-2 at 44 (R. 43).] She indicated that their opinions that Peggy could perform light work with postural and environmental limitations "were offered by highly qualified physicians who are considered experts in the evaluation of the medical issues in disability claims and are generally consistent with the objective evidence showing that the claimant generally has a normal gait, normal strength, sensation and reflexes in the lower extremities, and normal oxygen saturation levels and clear lungs." [Dkt. 6-2 at 45 (R. 44).]

The ALJ also recounts the impression from the April 2015 knee MRI, noting that it showed a chronic tear of the anterior cruciate ligament (ACL), meniscus tear, joint effusion, and a Baker cyst. [Dkt. 6-2 at 42 (R. 41).] The ALJ accepted the state agency physicians' opinions on what functional limitations Peggy had, but after reviewing the April 2015 right knee MRI herself, the ALJ concluded additional limitations were warranted:

> Based on the evidence showing degenerative changes and ligament tears in the claimant's right knee, however, the undersigned concludes the claimant can only stand or walk for four total hours in an eight-hour day and requires the option to sit or stand alternatively at will every 30-45 minutes while remaining on task.

[Dkt. 6-2 at 45 (R. 44).]

The ALJ makes two fatal mistakes here: (1) she assigned great weight to the state agency physician opinions, who, as noted above, only reviewed half of the record – the half that did not contain the knee MRI, evidence of continued degeneration of her spinal condition and neuropathy, and evidence of her continued heart and lung issues; and (2) she interpreted the April 2015 knee MRI and assigned limitations based on her interpretation of that MRI.

It was improper for the ALJ to rely on the opinions of state agency physicians, whose opinions were issued based on less than half of the 500 pages of medical evidence in the record. The ALJ did not acknowledge that the updated medical evidence showed an increasingly severe combination of impairments than were present at the time of the state agency physicians' assessments. *See Terri R. v. Berryhill,* No. 2:17-cv-465-WTL-MJD, 2018 WL 4443002 (S.D. Ind. Sept. 18, 2018) (concluding that the ALJ was not entitled to rely on the state agency physicians' assessment as to the entire record because they did not review important updated medical evidence).

Most importantly, the ALJ never subjected the right knee MRI to medical scrutiny; instead, the ALJ concluded, without expert input, that a limitation to four hours of standing or walking and the option to sit or stand at will would accommodate the degenerative changes found in the MRI. The Seventh Circuit has repeatedly, and recently, found this to be error, and the district courts have almost exclusively concurred. *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) (the ALJ was not qualified to determine on his own whether MRI results corroborated

the claimant's complaints "without the benefit of an expert opinion"); *McHenry v. Berryhill,* 911 F.3d 866, 871 (7th Cir. 2018) (the ALJ was not qualified to assess on his own how an MRI's result related to other evidence in the record); *Michelle M. v. Saul*, No. 18 CV 50003, 2019 WL 6609425, at *4-5 (N.D. Ill. Dec. 5, 2019) (same); *Thomas Dohner v. Saul,* No. 1:18-cv-251-HAB, 2019 WL 6888450, at *3 (N.D. Ind. Dec. 18, 2019) (same).

The Court is not in a position to make a definitive judgment as to whether the ALJ's assigned limitation based on the right knee MRI was appropriate or accurate; indeed, it is outside the Court's authority. The record in this case contains no evaluation of the 2015 knee MRI in the context of what, if any, functional limitations the findings would support. Instead, the ALJ had only the MRI report itself and Dr. Lee's recitation of his conversation with Peggy related to next treatment steps. [Dkt. 6-12 at 27 (R. 620).] The 2015 knee MRI may turn out to be consistent with the state agency physicians' opinions and with the ALJ's assigned functional limitation, but that determination must be made by a medical expert, rather than the ALJ or this Court. *See Akin*, 887 F.3d at 317-18. Accordingly, the Court remands the case on this issue.

### ii.  Dr. Eric Trueblood

Plaintiff additionally argues that the ALJ erred by giving significant, but not controlling weight to her treating cardiopulmonologist, Dr. Eric Trueblood. [Dkt. 12 at 23-24.] Peggy argues that the ALJ's reason for discounting Dr. Trueblood's opinion was not "good" and that although the ALJ purported to adopt Dr.

15

Trueblood's recommendation that Peggy could only stand or walk for four hours per work day, that recommendation was not included in any hypothetical to the vocational expert or in her listed RFC. [Id.] If the ALJ had included the stand and walk for four hours limitation, Peggy asserts that she would be deemed disabled under Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids[4]"). [Id at 26.]

The Commissioner argues that the ALJ properly gave significant weight to Dr. Trueblood while declining to adopt his recommendation that Peggy would miss one day per month and would need less than moderate exposure to pulmonary irritants in the workplace. [Dkt. 19 at 9.] Additionally, the Commissioner notes that Peggy would not be considered disabled under the "grids" because the vocational expert testified that Peggy could do her past relevant work as an insurance clerk even if she were limited to a sedentary exertion level. [Id. at 10.] Finally, the Defendant notes that Peggy failed to demonstrate how the ALJ's RFC did not account for her environmental limitations, because she did not mention any further limitations at the hearing or in her briefing. [Id.]

On reply, Peggy notes that the Defendant did not confront or dispute any evidence she cited demonstrating that her cardiac symptoms could result in one missed day from work per month. Additionally, the Plaintiff maintains that the

---

[4] "If a person has a severe medically determinable impairment which, though not meeting or equaling the criteria in the Listing of Impairments, prevents the person from doing past relevant work, it must be determined whether the person can do other work." Social Security Ruling 85-15. The grids discuss the relative adjudicative weights which are assigned to a person's age, education, and work experience and may help the ALJ determine whether other jobs exist in the national or regional economy that a claimant can perform. Social Security Ruling 85-15; *see Fast v. Barnhart*, 397 F.3d 468 (7th Cir. 2005).

Commissioner failed to provide any "good reasons" for discounting only that

particular portion of Dr. Trueblood's otherwise wholly accepted medical opinion.

[Dkt. 21 at 5-6.]

> In her opinion, the ALJ considered Dr. Trueblood's medical opinion:
>
> The undersigned gives significant, but not controlling weight to the opinion of treating physician Eric Trueblood, M.D., indicating the claimant is capable of high stress work, can stand or walk about four total hours and sit for six total hours in an eight-hour day, can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, and can frequently twist, stoop, crouch, climb stairs, and climb ladders, but needs to avoid concentrated exposure to extreme cold, extreme heat, high humidity, wetness, cigarette smoke, and perfumes and needs to avoid even moderate exposure to soldering fluxes, solvents, fumes, odors, gases, and dust. Dr. Trueblood indicated the claimant would miss approximately one day per month, but felt the claimant can work as long as pulmonary irritants are minimized (B10F). While this opinion was offered by a treating specialist and is largely consistent with the assessed residual functional capacity, the portions of Dr. Trueblood's opinion indicating the claimant needs to miss work and avoid even moderate exposure to certain pulmonary irritants are inconsistent with the objective medical evidence showing that the claimant generally had normal oxygen saturation levels and clear lungs throughout the period at issues (B5F/15, 20; B9F/7, B12F; B17F/4).

[Dkt. 6-2 at 45 (R. 44).]

Based on the filing date of Peggy's application, the treating physician rule

applies. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the

treating physician rule applies only to claims filed before March 27, 2017). In *Scott*

*v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)6),

the Seventh Circuit held that a "treating doctor's opinion receives controlling weight

if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in

the record." *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

"If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott*, 647 F.3d at 740 (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)); *see* 20 C.F.R. § 416.927(c). However, so long as the ALJ "minimally articulates" his reasoning for discounting a treating source opinion, the Court must uphold the determination. *See Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the relevant factors laid out in 20 C.F.R. § 404.1527).

The ALJ undoubtedly considered the appropriate regulatory factors under 20 C.F.R. § 404.1527, namely whether Dr. Trueblood treated Peggy and for how long, his specialty, and the consistency of his opinion with the objective medical evidence and the record as a whole. The Seventh Circuit has concluded that if "the ALJ discounts the physician's opinions after considering these factors, we must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his reasons – a very deferential standard that we have, in fact, deemed 'lax.'" *Elder*, 529 F.3d at 415. In this case, citing to objective medical evidence, the ALJ adopted all of Dr. Trueblood's recommended limitations, except for his conclusion that Peggy would miss one day of work per month and that Peggy needed to avoid exposure to certain

pulmonary irritants. The ALJ, by considering Dr. Trueblood's treating relationship, specialty, and the consistency and supportability of his opinion, minimally articulated her reasons for discounting Dr. Trueblood's opinion and, thus, satisfied her burden. The Court, therefore, finds no reason to disturb the ALJ's weighing of Dr. Trueblood's opinion.

Plaintiff's next argument relates to the ALJ's hypotheticals presented to the vocational expert at the hearing. In her opinion, the ALJ twice purports to adopt Dr. Trueblood's recommendation that Peggy can only stand or walk for up to four hours per work day, but the ALJ never included that limitation in any of her three hypotheticals to the vocational expert and did not include that limitation in her listed RFC in the opinion.

"In this circuit, both the hypothetical posed to the [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). ALJs are required to orient the vocational expert to the totality of a claimant's limitations. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The most effective way to ensure that the vocational expert is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical. *Id.* Providing the vocational expert a faulty hypothetical can render an ALJ's decision unsupported by substantial evidence. *Wilson v. Berryhill*, No. 4:17-cv-00088-TAB-RLY, 2018 WL 300184, at *2 (S.D. Ind. Jan. 5, 2018).

The ALJ here contended that she was adopting Dr. Trueblood's recommendation that Peggy could only stand or walk for up to four hours during the work day, but went on to conclude that Peggy could perform a limited range of light duty work. The SSA considers light work to require standing or walking for about six hours in an eight-hour work day. *See* Social Security Ruling 83-10, 1983 WL 31251, at *5-6; 20 C.F.R. § 404.1567(b). The plain language of the ALJ's opinion does not coincide with her assessed RFC or with the hypotheticals that she provided to the vocational expert. Because the hypothetical questions posed to the vocational expert failed to incorporate all of Peggy's limitations supported by the medical evidence in the record, this case must be remanded on this issue. Accordingly, the Court finds that the ALJ's RFC findings were not supported by substantial evidence and failed to adequately reflect the limitations of record that the ALJ found credible.

## B.  New and Material Evidence

Next, the Plaintiff argues that the Appeals Council erred by concluding that the additional evidence Peggy submitted was not "new and material." [Dkt. 27 at 27.] Peggy asserts that she submitted approximately 40 additional pages of medical evidence after the ALJ issued her decision, but that the Appeals Council considered half of them not related because they were dated after the ALJ's decision and that the other half wouldn't change the outcome of the ALJ's decision. [Id. at 28.] Peggy maintains that the Appeals Council's decision is reviewable because they dismissed the evidence as not related and not material, which would then allow this Court to

review *de novo* the Council's classification of "not material." [Id. at 28-29.] Peggy argues that the evidence is material because it demonstrates that the ALJ's light duty assignment was improper. [Id. at 27.]

In response, the Defendant argues that the Appeals Council properly reviewed the additional evidence under the recently revised 20 C.F.R. § 404.970. [Dkt. 19 at 11.] The Commissioner further argues that the Appeals Council's decision is not judicially reviewable; even if it were, the Commissioner asserts, the Appeals Council correctly concluded that the evidence submitted was not sufficient to alter the ALJ's decision. [Id. at 14-15.]

The Plaintiff notes that the Defendant misstates her argument: she asserts that the Appeals Council did not adequately indicate whether the newly submitted evidence was reviewed with regard to materiality or whether it presented a reasonable probability that it could alter the ALJ's decision. [Dkt. 21 at 3.] Because the Appeals Council did not articulate more than a perfunctory rationale for excluding Plaintiff's newly submitted evidence, Plaintiff argues, this Court should review the evidence for newness and materiality. [Id. at 4.]

On September 4, 2018, the Appeals Council issued a Notice of Appeals Council Action, stating the following, in relevant part:

> You submitted treatment records from FPN Joint Replacement Surgeons dated May 19, 2015 through December 30, 2015 (3 pages) and treatment records from Josephson Wallack Munshower Neurology PC dated August 6, 2015 through October 24, 2016 (17 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

> You also submitted treatment records from FPN Joint Replacement Surgeons dated May 8, 2018 and May 29, 2018 (10 pages); treatment records from Josephson Wallack Munshower Neurology PC dated September 21, 2017 through September 22, 2017 (3 pages); and treatment records from Pinnacle Behavioral Health dated May 17, 2018 (5 pages). The Administrative Law Judge decided your case through August 2, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 2, 2017.

[Dkt. 6-2 at 6 (R. 5).]

Ordinarily, when the Appeals Council ("the Council") denies review, the Court evaluates the ALJ's decision as the final word of the Commissioner. If, however, the Council denies review despite the submission of additional evidence in support of the application, a claimant may be able to obtain judicial review of the denial, depending on the grounds upon which the Council declined review. *See Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015). If the Council determined that the claimant's additional evidence was not "new and material," and therefore deemed the evidence "non-qualifying," the court retains jurisdiction to review that conclusion for legal error. *Stepp*, 795 F.3d at 722 (citing *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012)). If, on the other hand, the Council deemed the evidence new, material, and time-relevant ("qualifying" under the regulation) but then denied review in the exercise of discretion based on its conclusion that the record— as supplemented—did not demonstrate the ALJ's decision was contrary to the weight of the evidence, that decision is unreviewable. *Id.* (citing *Perkins v. Chater,* 107 F.3d 1290, 1294 (7th Cir. 1997)).

On May 1, 2017, the SSA revised the applicable regulation that governed how the Appeals Council reviews newly submitted evidence, which now indicates that

the Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). This Court recently noted on this topic: "The revised regulation jettisons any explicit reference to the Appeals Council comparing the ALJ's decision against the weight of the evidence as part of its determination to grant review. Instead, the regulation explicitly incorporates the language used by the Seventh Circuit to evaluate materiality as part of the required determination. The regulation continues to require that the evidence is also material, which renders the requirements duplicative when applying the existing Seventh Circuit precedent." *Teresa F. v. Saul*, 1:18-cv-1967-JRS-MPB, 2019 WL 2949910, at *8 (S.D. Ind. July 9, 2019). The Seventh Circuit has not yet had an opportunity to provide precedential guidance concerning application of the new regulation.

As noted above, the Council indicated that Peggy's records dated September 21, 2017 through May 29, 2018 did "not relate to the period at issue" because the medical visits occurred after the ALJ's decision of August 2, 2017. "The requirement that newly submitted evidence relate to the period on or before the date of the ALJ hearing decision is distinct from the mandate that it also be "new and material." *Stepp*, 795 F.3d at 723. The Appeals Council does not indicate whether it reviewed or exhibited the evidence. It appears that the Council deemed the evidence not related simply because the medical visits occurred after the ALJ's decision came out

– that fact alone does not render those medical records not related. Peggy suffers from several degenerative conditions, the records for which may corroborate her subjective complaints about the severity of her symptoms. While the Court can infer that the Council rejected these records because they were created after the ALJ's August 2017 decision, it is unclear, however, whether the Council also found them to be new and material.

In regard to the records dated May 19, 2015 through October 24, 2016, the Appeals Council noted that this newly submitted evidence did not show a reasonable probability of changing the outcome of the case. The next sentence, however, noted that the Council did not exhibit the evidence. Taking these two sentences together, it is unclear whether the Council did not consider the evidence at all, or whether it actually evaluated the evidence but found that it would not "change the outcome." [Dkt. 6-2 at 6 (R. 5).]

District courts within this circuit have differed over whether review is available, under the revised regulation, when the Council uses such language in the denial order. *Compare Colleen C. v. Saul,* No. 18 C 1838, 2019 WL 3986077, at *2-3, (N.D. Ill. Aug. 23, 2019) (interpreting this language to mean the Council rejected the new evidence as non-qualifying); and *Musonera v. Saul*, No. 18-C-1852, 2019 WL 5152890, at *5 (E.D. Wis. Oct. 15, 2019) (same); with *Jandt v. Saul*, No. 18-C-737, 2019 WL 4464763, at *5 (E.D. Wis. Sept. 18, 2019) (finding denial using this language discretionary and unreviewable); *see also Patricia Kay M. v. Comm'r of Soc. Sec.*, No. 19-cv-065-DGW, 2019 WL 3997087 at *5-6, (S.D. Ill. Aug. 23, 2019)

(finding the language ambiguous but declining review where the Council did not state it was rejecting the evidence under § 404.970(c)).

Here, the Appeals Council rejected Peggy's evidence because it did not "show a reasonable probability that it would change the outcome of the decision." [Dkt. 6-2 at 6 (R. 5).] The Council did not address the contents of the medical evidence and explicitly indicated that they did not exhibit the evidence. The agency's Hearings, Appeals, and Litigation Law ("HALLEX") manual indicates that when the Council finds additional evidence to be "qualifying," it will exhibit that evidence; non-qualifying evidence, on the other hand, is not exhibited. *See Stepp*, 795 F.3d at 724 n.6; *Brown v. Colvin*, No. 1:14-cv-01797-JMS-MJD, 2015 WL 3886029, at *14 (S.D. Ind. June 22, 2015). The Council's two sentences seem to be offering opposite conclusions, which creates some difficulty for the Court in determining what bases the Council used to deny Peggy's request for review. Based on that uncertainty, the Undersigned, relying on the Seventh Circuit's guidance that ambiguous statements from the Council should be construed in favor of review, finds that the Council deemed Peggy's additional evidence non-qualifying. *Farrell*, 692 F.3d at 771. Accordingly, the Court will engage in a *de novo* review as to whether Peggy's additional evidence was material.

Evidence is "material" if it "creates a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Stepp*, 795 F.3d at 725 (quotations omitted).

Peggy's additional submitted evidence from Joint Replacement Surgeons of Indiana, dated May 19, 2015 through December 30, 2015, shows that she underwent a right knee arthroscopy procedure. [Dkt. 6-3 at 21-23 (R. 125-27).] The other evidence is from Josephson Wallack Munshower Neurology PC, dated August 6, 2015 through October 24, 2016, and shows that Peggy underwent an EMG that resulted in a diagnosis of severe right peroneal neuropathy. [Dkt. 6-3 at 4-19 (R. 108-123).] Due to that diagnosis, Peggy was prescribed Neurontin and presented for multiple follow-ups in that one-year period. [Id.]

When the ALJ evaluated Peggy's medically determinable impairments, she noted:

> The record also contains claimant's allegations and reports that she suffers from peripheral neuropathy (Hearing Testimony; B12F/1). However, these allegations and reported diagnosis are not accompanied by anatomical, physiological or psychological abnormalities shown by medically acceptable clinical and laboratory diagnostic techniques (20 CFR 404.1521). As such, these allegations are not reasonably related to a medically determinable impairment and have not been considered in assessing the residual functional capacity below (20 CFR 404.1545(a)(2); SSR 96-8p).

[Dkt. 6-2 at 37 (R. 36).] From the ALJ's discussion, she did not consider Peggy's neuropathy to be a medically determinable impairment because there was no objective medical evidence to support the diagnosis. Thus, the ALJ did not use Peggy's neuropathy in assessing her RFC. It is reasonably likely that the ALJ may have assigned more restrictive limitations with regarding to sitting, standing, or walking if she had considered Peggy's neuropathy when formulating the RFC. Accordingly, the Court remands on this issue.

26

## V.    Conclusion

For the reasons detailed herein, this court **REVERSES** the ALJ's decision denying Plaintiff benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four) as detailed above. Final judgment will issue accordingly.

So ORDERED.

Date: 1/6/2020

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record.